**KANSAS CITY, Missouri, a municipal corporation, Respondent,**

**v.**

**Marion N. QUERRY, Appellant.**

**No. 57457.**

Supreme Court of Missouri, Division No. 1.

July 22, 1974.

Aaron A. Wilson, City Counselor, Norma S. Webster, Asst. City Counselor, Kansas City, for respondent, Kansas City, Missouri.

Kenneth K. Simon, Bruce W. Simon, Kansas City, for appellant.

HIGGINS, Commissioner.

Appeal from judgment for plaintiff for delinquent earnings taxes involving construction of revenue laws.

On June 24, 1955, the City of Kansas City, by deed of gift, donated to the United States 1,787.85 acres of land, more or less, of which 837.64 acres were located in Jackson County, Missouri.

Exclusive jurisdiction over the lands above described was ceded to the United States by the State of Missouri by virtue of Section 12.040 Revised Statutes of Missouri, Laws 1955, page 768, Section 2, which became effective on August 29, 1955, subject to reservation of right of taxation for the State of Missouri.

Exclusive jurisdiction of the lands was accepted by the United States on September 20, 1955, by letter from the Undersecretary of the Air Force to the Governor of Missouri, and the lands were incorporated into and now comprise the major part of the federal military installation known as Richards-Gebaur Air Force Base.

Under the authority of the Constitution and Laws of Missouri, the charter of Kansas City, Missouri, was amended March 1, 1960, by adding to Article I one new section extending the corporate limits of the city in Jackson County, Missouri, and fixing the effective date of the amendment as January 1, 1963. The legal description of the lands annexed by the charter amendment includes that part of Richards-Gebaur Air Force Base which lies in Jackson County, Missouri.

Annexation of said lands was not objected to by the United States, and the annexation does not affect federal title, legislative jurisdiction, or otherwise interfere with operation of the base by the Department of the Air Force.

Under authority of the Constitution and Laws of Missouri and by provisions of its charter, plaintiff has enacted Ordinance No. 29331 entitled "Earnings and Profits Tax," which ordinance became effective December 20, 1963, and has remained in full force and effect to the present date. Section 32.141(a)(2) of the ordinance provided that a tax of one-half percent per annum was imposed on all salaries, wages, commissions, and other compensation earned or received by nonresident individuals of the city for work done or services performed or rendered in the city.

During the year 1967, defendant was a nonresident of Kansas City, Missouri, and earned fifty percent of his income in the year 1967 as a result of employment for the United States government within that portion of the Richards-Gebaur Air Force Base situated within Jackson County, Missouri. His earnings in that capacity amounted to $8,235.27.

The court found:

"1. The annexation of the City of Kansas City, Missouri of that parts of Richards-Gebaur Air Force Base lying within Jackson County, Missouri is valid.

"2. The City of Kansas City, Missouri has the power to tax earnings of non-residents of the City employed upon that portion of Richards-Gebaur Air Force Base within the city limits.

"3. Sec. 12.040 V.A.M.S. '. . . reserving . . . to the State of Missouri the right of taxation to the same extent and in the same manner as if this cession had not been made . . .' (pertaining to land acquired by the United States for military and other purposes) is to be construed as reserving said rights to the State of Missouri *including its political subdivisions.*

"4. The City of Kansas City, Missouri is not denied the right to tax the earnings in question by virtue of Sec. 12.040 V.A. M.S.

"5. Defendant is obligated to plaintiff for earnings taxes for the year 1967 in the sum of $20.59 plus interest at the rate of 6 percent per annum from April 15, 1968."

Judgment was rendered accordingly.

Appellant contends the court erred "in holding that a nonresident of Kansas City employed by federal government on a fed-

eral reservation and performing a portion of his duties on said reservation within Jackson County, Missouri, is subject to the taxing provisions of the City of Kansas City, Missouri."

Appellant argues that Section 12.040, RSMo 1959, V.A.M.S.,[1] precludes the City of Kansas City, or any other city so situate, from enforcing its tax ordinances upon the income of defendant or others so situate. He describes this provision as an "exemption," to argue further that such exemption is consistent with other mandatory exemptions of sources of income utilized by the state legislature which result in restriction of the scope of the "E Tax." In the latter category appellant cites Section 92.220 RSMo 1969, V.A.M.S., and Section 32.144, Code of General Ordinances of the City of Kansas City, which exempt from the earnings tax income referred to in Sections 143.120 to 143.150, i. e., service pay, income from certain organizations, estates and trusts, and other types of income, none of which resembles appellant's earnings; and Section 148.480, RSMo 1959, V.A.M.S., which provides that a two percent tax on dividends of savings and loan associations shall be exclusive and in lieu of all other taxes due from such associations. See City of Poplar Bluff v. Poplar Bluff Loan & Bldg. Ass'n, 369 S.W.2d 764 (Mo. App.1963).

Appellant asserts that these provisions show that the legislature can exclude any particular source of income from a city's taxing power; and that because of the language of Section 12.040, supra, the State of Missouri unconditionally surrendered any jurisdictional interest other than the right to tax specifically reserved to the state without similar protection to any subordinate jurisdiction such as a county or city.

Appellant also asserts that the only reason for acquisition of the lands in question by Kansas City was for revenue purposes, and that such annexation is not valid because it was solely for "profit" for the city. See the "unique" case, United States v. City of Bellevue, 474 F.2d 473 (8th Cir. 1973), affirming 334 F.Supp. 881 (D.C. Neb.1971), where a direct attack on a city's intended annexation was successful under conclusive evidence that the city's intention by the annexation was solely to obtain revenue.

Appellant's position presents two questions:

1. Is the annexation by Kansas City of part of Richards-Gebaur Air Force Base valid?

2. Does Kansas City have the power to tax earnings of nonresidents of the city employed upon that portion of the base within the city limits?

Both questions are answered in the affirmative.

Howard v. Commissioners of Louisville, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953), presented virtually identical questions, i. e., the validity of the annexation by the city of federally-owned lands on which a naval ordnance plant was located; and the validity of the city's occupational tax as applied to employees of the plant. The facts were equally similar: In 1940 the United States acquired the land by condemnation with consent of the legislature of Kentucky given by general statute. In 1941, the Secretary of the Navy on behalf of the United States accepted exclusive jurisdiction over the area, and the Governor of Kentucky acknowledged this acceptance. In 1947 and 1950 the city annexed certain territory including the ordnance plant tract. The annexation was not challenged. After the annexation, the city started to collect from employees of the plant a license tax for the privilege of working in the city, measured by one percent of all

---

1. "Exclusive jurisdiction in and over any land acquired prior to the effective date of Sections 12.030 and 12.040, by the United States, is ceded to the United States for all purposes, saving and reserving, however, to the state of Missouri the right of taxation to the same extent and in the same manner as if this cession had not been made * * *."

salaries, wages and commissions earned in the city. The plant employees sought a declaratory judgment that the ordnance plant was not within the city and therefore the employees were not subject to the tax. The Jefferson County Circuit Court of Kentucky granted relief to the employees; the Court of Appeals of Kentucky reversed and entered judgment for the city. The Supreme Court agreed, answering the questions presented in the affirmative:

"The appellants first contend that the City could not annex this federal area because it had ceased to be a part of Kentucky when the United States assumed exclusive jurisdiction over it. With this we do not agree. When the United States, with the consent of Kentucky, acquired the property upon which the Ordnance Plant is located, the property did not cease to be a part of Kentucky. The geographical structure of Kentucky remained the same. In rearranging the structural divisions of the Commonwealth, in accordance with state law, the area became a part of the City of Louisville, just as it remained a part of the County of Jefferson and the Commonwealth of Kentucky. A state may conform its municipal structures to its own plan, so long as the state does not interfere with the exercise of jurisdiction within the federal area by the United States. Kentucky's consent to this acquisition gave the United States power to exercise exclusive jurisdiction within the area. A change of municipal boundaries did not interfere in the least with the jurisdiction of the United States within the area or with its use or disposition of the property. The fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within it boundaries, so long as there is no interference with the jurisdiction asserted by the Federal Government. The sovereign rights in this dual relationship are not antagonistic. Accommodation and cooperation are their aim. It is friction, not fiction, to which we must give heed.

"This question has been before other state courts, and the right to annex has been upheld. Wichita Falls v. Bowen, 143 Tex. 45, 52, 182 S.W.2d 695, 699; County of Norfolk v. Portsmouth, 186 Va. 1032, 1047, 45 S.E.2d 136, 142–143. We agree with these cases and hold that Louisville was free to annex the Ordnance Plant area.

"Even though the Ordnance Plant is within the boundaries of the City of Louisville pursuant to the annexation, exclusive jurisdiction over the area still remains with the United States, except as modified by statute. U.S.Const., Art. I, § 8, cl. 17; Surplus Trading Co. v. Cook, 281 U.S. 647, 652, 50 S.Ct. 455, 74 L.Ed. 1091. Within this jurisdiction, the right to tax income paid to employees of the Government who worked at the Ordnance Plant was granted by 4 U.S.C. §§ 105–110, known as the Buck Act. Section 106 of this Act reads as follows:

" ' § 106. Same; income tax.

" '(a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.

" '(b) The provisions of subsection (a) shall be applicable only with respect to income or receipts received after December 31, 1940.' 4 U.S.C. (Supp. V) § 110(c).

"Thus the right is specifically granted to the City of Louisville as a taxing authority of Kentucky to levy and collect a tax mea-

sured by the income or earnings of any party 'receiving income from transactions occurring or services performed in such area . . . to the same extent and with the same effect as though such area was not a Federal area.' In other words, Kentucky was free to tax earnings just as if the Federal Government were not there." Howard v. Commissioners, supra, l.c. 626–628, 73 S.Ct. l.c. 466.

■ Similarly, the United States acquired the land on which Richards-Gebaur Air Force Base was located June 24, 1955; exclusive jurisdiction over the area subject to reservation of right of taxation was ceded to the United States by Missouri by Section 12.040, supra, August 29, 1955; exclusive jurisdiction was accepted by the Undersecretary of the Air Force on behalf of the United States by letter to the Governor of Missouri September 20, 1955; on March 1, 1960, Kansas City annexed the portion of the lands in question, and that area became validly annexed to Kansas City.

■ And, even though Richards-Gebaur Air Force Base is within the boundaries of Kansas City, exclusive jurisdiction over the area remains with the United States except as modified by statute. By federal statute, 4 U.S.C.A., Sections 105–110 (Cum.Supp.1973 [the Buck Act]), the right to tax income paid to employees of the federal government in the area in question was granted to Kansas City. "This Act has been construed to authorize a city to impose a tax on civilian employees of the United States Navy for the privilege of working in a naval ordinance [sic] plant located in such city. See Howard v. Commissioners * * *. It has been recognized for many years that income of nonresident federal employees earned in a

state or subdivision may be taxed by such jurisdiction." Application of Thompson, 157 F.Supp. 93 (E.D.Pa.1957), affirmed 258 F.2d 320 (3rd Cir. 1958).

Section 32.14(a)(2) of Kansas City's Earnings Tax Ordinance imposed the tax on all salaries, wages, commissions, and other compensation earned or received by nonresidents of the city for work done or services performed or rendered within the city. The city is a duly-constituted taxing authority within the meaning of the Buck Act, and the ordinance was duly enacted under authority of the Constitution and Laws of Missouri, in that Article 10, Section 1, Constitution of Missouri, 1945, V.A.M.S., places the taxing power of the state in the General Assembly and authorizes it to delegate the taxing power to political subdivisions for municipal purposes. One such delegation of taxing power is found in Section 92.210, RSMo 1969, V.A.M.S. which authorizes Kansas City to levy and collect an earnings tax on compensation earned by nonresidents of the city for services or work performed within the city. The right to tax reserved by Section 12.-040, supra, was properly delegated to the city by Section 92.210, supra, and that power was properly exercised by Section 32.141(a)(2) of the Kansas City ordinances, supra. In this respect, the Buck Act and Section 12.040 accomplish the same purpose.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All of the Judges concur.